UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PAMELA ZAHM, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-176-LMB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| MICHAEL ASTRUE, Commissioner, Social | ) | **AND ORDER** |
| Security Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently pending before the Court is Pamela Zahm's Petition for Review (Docket No. 1). Zahm seeks review to set aside the final decision of Respondent denying Zahm's claims for Title II Social Security disability and Title XVI Supplemental Security Income benefits. She brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to having the United States Magistrate Judge conduct all further proceedings in this case. (Docket Nos. 12 & 13). Having carefully reviewed and considered the pleadings, briefs and administrative record, and being otherwise fully advised, the Court enters the following Memorandum Decision and Order reversing the Commission's decision and remanding for further administrative proceedings.

## ADMINISTRATIVE PROCEEDINGS

Paula Zahm ("Petitioner" or "Claimant") protectively filed for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), and

supplemental security income benefits under Title XVI of the Act, on February 10, 2004

(AR 19, 125).  Petitioner alleges disability in the form of several impairments, or combination

thereof, including chronic pain in her back and neck from degenerative disk disease and spasms

from a car accident, bipolar disorder, post-traumatic stress disorder (PTSD), asthma, chronic

obstructive pulmonary disease (COPD), coronary artery disease, heart attack, headaches and

fibromyalgia.  (AR 116-17, 98, 414).  In her petition she alleges an onset date of January 1,

2001.  (*Id.*)

The Commissioner denied Petitioner's application initially on November 10, 2004 (AR

63), and upon reconsideration on March 10, 2005, (AR 56).  Petitioner filed a timely request for

a hearing which took place before Administrative Law Judge Hayward C. Reed on December 12,

2006.  (AR 19, 410 - 452).  Petitioner was represented by attorney Andrea Cardon.  (AR 19).

Vocational Expert (VE) Karen S. Black also appeared and testified at the hearing.  (*Id.*)  At the

hearing, Petitioner amended her onset date to November 21, 2002, the date of her car accident.

(AR 414).

On June 18, 2007, the ALJ denied Petitioner's claim based on a finding that Petitioner

"has not been under a disability, as defined in the Social Security Act, from January 1, 2001

through the date of" the ALJ's decision.  (AR 34)[1]

Petitioner requested the Appeals Council review the ALJ's decision.  (AR 14, 15).  The

Appeals Council denied review on January 16, 2008, making the AJL's decision the final

---

[1] Part of the specific finding of the ALJ is unclear due to a printing problem contained
throughout the decision which is discussed in detail below. The decision clearly states a finding
of no disability generally, and specifically under section 1614(a)(3)(A).  Implicitly, the ALJ  also
concludes that the claimant is not disabled under section 216(i) and 223(d). (AR 35).

decision of the Commissioner of Social Security.  (AR 8 - 10).

Having exhausted her administrative remedies, Petitioner timely filed the instant action.

*Petition for Review* (Docket No. 1).  Petitioner requests that the ALJ's decision be reversed or, in

the alternative, that this matter be remanded for an ALJ hearing *de novo*.

## BACKGROUND

At the time of the hearing before the ALJ, Petitioner was forty-nine years old, and three

months short of her fiftieth birthday.  (AR 68).  She attended school until the ninth grade, and

obtained her GED in 1975.  (AR 124, 416).  She completed barber college in 1986. (AR 124).

She has the ability to communicate, fluently, in English.  (AR 116).  Further, Petitioner has

worked as a barber and as a housekeeper.  (AR 118,  416, 447).   Petitioner has stated that due to

her disability, she has been unable to perform either of these past jobs.  (AR 68, 117, 418 - 20).

The ALJ determined that Petitioner does have the following severe impairments:

fibromyalgia syndrome, degenerative changes of the cervical spine, a bipolar II disorder, and an

anxiety related disorder.  (AR 22 (*citing* 20 CFR 404.1520(c) and 416.920(c))).

Notwithstanding, the ALJ concluded that Petitioner had not met her burden of proving that she

has been under a disability as defined by the Social Security Act during the period under

consideration and denied her application for benefits accordingly.  (AR 34-35).

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon the Petitioner to establish entitlement

to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the

evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20

C.F.R. §§ 404.1520, 416.920 (2005).  If the Commissioner's decision is supported by substantial

evidence and based upon proper legal standards, then it will be upheld. 42 U.S.C. § 405(g) (2000); *Matney ex rel. Matney v. Sullivan*, 921 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of fact by the ALJ are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual determinations, they must be upheld, even in the face of conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). This standard requires "more than a scintilla," but "less than a preponderance," *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). When the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court

may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will only be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id.*  However, reviewing courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id.* at 1095 (citations omitted).

The issue presented in the instant appeal is whether the ALJ's decision adopted by the Appeals Council, that Petitioner was not disabled, is supported by substantial evidence and whether the finding is based on application of proper legal standards.

## DISCUSSION

A.  **Sequential Process**

When evaluating evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  "The burden of proof is on claimant as to steps one through four[, but] as to step five, the burden shifts to [the] Commissioner."  *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999).

The first step of the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so,

Petitioner is not disabled, and benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant

action, the ALJ concluded that Petitioner has not performed substantial gainful activity since

January 1, 2001.  (AR 21).

The second step requires the ALJ to determine whether the claimant's impairment or

combination of impairments are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  If the answer is in the

negative, disability benefits are denied.  20 C.F.R. § 404.1520(c).  Here, the ALJ found that

Petitioner has the following severe impairments: fibromyalgia syndrome, degenerative changes

of the cervical spine, a bipolar II disorder, and an anxiety related disorder. (AR 22).

At the third step, the ALJ must determine whether the claimant's impairments meet or

equal a listed impairment under the 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If so, the claimant is

disabled, and entitled to disability insurance benefits.  20 C.F.R. § 404.1520(d).  "If the

claimant's impairment neither meets nor equals one of the impairments listed in the regulations,

then the claimant's case cannot be resolved at step three and the evaluation proceeds to step

four."  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (*citing* 20 C.F.R. §

404.1520(d)).  In the instant action, the ALJ examined the listing requirements for

musculoskeletal (1.00ff) and mental (12.00ff) impairments and concluded that Petitioner "does

not have an impairment or combination of impairments that meets or medically equals one of the

listed impairments in [20 C.F.R. Pt. 404, Subpt. P, App. 1]."  (AR 24-25).

The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity (RFC) is sufficient for the claimant to perform past

relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If so, the claimant is "not disabled" and thus not

entitled to disability insurance benefits.  *See* 20 C.F.R. § 404.1520(e).  "If the claimant cannot do

any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step." *Lounsburry*, 468 F.3d at 1114.

In this regard, the ALJ concluded that Petitioner retains "the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently." (AR 25). He further found the she can "stand, walk, and/or sit up to 6 hours each during the course of an 8 hour day, with normal breaks," (AR 23–26) and that "she is limited to occasional crouching, crawling, stooping and balancing etc." (*Id.*) With respect to her mental impairments, the ALJ found Petitioner "slightly impaired in her ability to remember and carry out detailed instructions and moderately impaired in her ability to respond properly to work pressures in a usual work setting," and that she "has slight restrictions in her ability to interact appropriately with supervisors and coworkers," and to "respond appropriately to changes in routine work setting." (AR 25). The ALJ concluded that Petitioner is restricted to "no more than light exertional level work." (AR 34).

Concluding his analysis at step four, the ALJ found Petitioner capable of performing her past relevant work as a hairstylist and housekeeper, "both considered light exertional level unskilled-to-semiskilled work." (AR 34). The ALJ further concluded that neither past relevant work requires the performance of work-related activities precluded by Petitioners' functional capacity. (*Id.*) Accordingly, the ALJ concluded that Petitioner "has not been under a disability, as defined by the Social Security Act, from January 1, 2001, through the date of this decision." (AR 34).[2]

---

[2]The ALJ's analysis ended at step four. Had the ALJ concluded that Petitioner was not able to perform past relevant work, and proceeded to step-five, he would have then considered if the claimant is able to do any other work. 20 C.F.R. § 404.1520(f)(1). On the fifth step, the burden shifts to the ALJ. *Id.* If the ALJ finds that claimant cannot work, then the claimant is "disabled" and entitled to disability insurance benefits. *Id.* If the ALJ determines that the

## B. Analysis

Petitioner challenges the Commissioner's final determination on numerous grounds. First, Petitioner claims that she is prejudiced in challenging the ALJ's decision and that the court cannot conduct a proper judicial review because of the fact that approximately one line per page is unreadable due to a typographical or printing error. *Petitioner's Brief*, p. 2; *Petitioner's Reply Brief*, pp. 1 -2. Second, Petitioner claims the ALJ committed reversible error in step two of the sequential process by failing to make any findings of severity for several of Petitioner's impairments, or combination thereof, including lumbar degenerative disk disease, COPD, coronary artery disease, asthma, PTSD and headaches. *Petitioner's Brief*, pp. 8-9. Third, Petitioner claims the ALJ committed reversible error in step three of the sequential process by failing to address whether the Petitioner met or equaled listing 3.02, and in failing to obtain a consultative medical exam, in regard to her COPD. *Id*. at 9-10. Fourth, Petitioner claims the ALJ committed reversible error at step four of the sequential process by not properly considering Petitioner's impairments listed above, or combination thereof, and how they would affect the Petitioner's mental and physical residual functional capacity. *Id*. at 10. Fifth, Petitioner contends that the ALJ committed reversible error in not properly discounting the treating physician opinions. *Id*. at 12-3. Sixth, Petitioner claims that the ALJ did not properly evaluate "other source" opinions or lay witness testimony. *Id.* at 13-15. Seventh, Petitioner claims the

---

claimant can work, the ALJ must then establish that there are a significant number of jobs in the national economy that claimant can do in his or her condition. *Id.* "If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits." *Lounsburry*, 468 F.3d at 1114. The ALJ can meet this burden two ways. *Id.* First, the ALJ can solicit the testimony of a vocational expert; and second, the ALJ can reference the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. *Id.*

ALJ failed to properly support his findings that the Petitioner is not credible, and improperly disregarded her pain testimony. *Id*. at 15-17. Eighth, and lastly, Petitioner claims that the ALJ committed reversible error by not providing any analysis or specific findings with regard to the mental demands of the Petitioner's past work and by not consulting a vocational expert in this regard. *Id.* at 19 - 20.

Respondent responds first that the ALJ's decision does permit for fair judicial review, and that the illegibility in the decision is harmless. *Respondent's Brief*, pp. 4-6 (Docket No. 26). Respondent further responds generally that the ALJ's determination is supported by substantial evidence in the record, *Respondent's Brief*, pp. 4-6. Respondent directly refutes Petitioner's claims that the ALJ erred in determining Petitioner's credibility, *id*. at 6 - 10, rejecting the treating physician opinions, *id.* 11 - 13, failing to discuss the listing criteria for chronic pulmonary insufficiency, *id.* at 15-6, not developing the record, *id.* at 16, and not making proper vocational findings, *id.* at 16-19. Respondent further claims the ALJ did not err in failing to find certain impairments severe or non-severe, *id.* at 15), or in the alternative, that any such error was harmless. *Id*. at 15. Likewise, Respondent claims that any error in the ALJ's evaluation of lay evidence is harmless. *Id*. at 13.

Respondent concludes, therefore, that the Commissioner's decision is based on substantial evidence and does not result from legal error. *Id.* at 18. This Court disagrees and therefore remands this matter for further consideration consistent with the opinion set forth below.

1. **Printer/typographical error**

Petitioner claims that the unreadable portions of the written decision prevent a fair review of the ALJ's decision, and states that *Williams v. Barnhart*, 289 F.3d 556 (8th Cir. 2002) may

apply.  Under *Williams*, the Court will only remand this case for this reason if there is an indication that the missing portion of the decision would bolster her argument or prevent judicial review.  *Id.* at 557-8 (citations omitted).  Respondent denies that either circumstance exists in this case.  The Court agrees that certain portions of the decision that are not readable do prevent judicial review of some of the ALJ's findings that may material to the decision.  The relevant findings, or lack of findings, implicated by the typographical error are discussed in context of the court's review of the parties' substantive arguments below.

2.        **Step Two: Determination of Medically Severe Impairment(s).**

At step two of the sequential process, the ALJ was required to determine whether Petitioner's impairments were severe.  The ALJ determined that Petitioner suffered from the following severe impairments:  fibromyalgia syndrome, degenerative changes of the cervical spine, a bipolar II disorder, and an anxiety related disorder.  (AR 22).

Petitioner argues that the ALJ failed to make findings of either "severe" or "non-severe" for several of her impairments, or a combination of the impairments, as required by CFR 404.1520(c) and 416.975(c).  *Petitioner's Brief*, pp. 8-9.  These omitted impairments were lumbar degenerative disk disease, COPD, coronary artery disease, asthma, PTSD and headaches.  Petitioner argues further that in failing to do so, he also did not consider the record as a whole and did not consider the impairments as a whole or in combination, as required by SSR 85-28, 86-8, and "applicable law."  *Id.* at 9.

Respondent does not disagree that the ALJ failed to make these specific findings of severity for several of Petitioner's impairments.  Instead, Respondent contends that the error was harmless because the ALJ was required to, and did, consider all of Petitioner's impairments,

severe and non-severe, in his RFC analysis. *Respondent's Memorandum*, p. 15 (Docket No. 26) (*citing Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)). Accordingly, Respondent suggests that the error was harmless.

The ALJ's findings in step-two are incomplete both in substance and because any finding that the ALJ may have made regarding non-severity appears to have been stated in an illegible portion of the opinion. (*See* AR 24).

The ALJ's severity findings are found in two places in section "3" (AR 22 - 24): the heading and the last paragraph of the section. The heading sets forth his finding that Petitioner's fibromyalgia syndrome, degenerative changes of the cervical spine, bipolar II disorder and anxiety related disorder[3] are severe. (AR 22). The last paragraph appears to have been the ALJ's finding of "non-severity" of at least Petitioner's asthma or coronary artery disease. The legible portion reads:

> In light of the above, the undersigned cannot find that the claimant's asthma or coronary artery . . . that these impairments significantly limit her physical or mental ability to perform work activities (20 CFR 404.1520(c)).

(AR 24). From the legible portion of the opinion, there is no mention at all of a severity finding by the ALJ on Petitioner's lumbar degenerative disk disease, COPD, headaches or a combination of any of Petitioner's impairments. The Court finds error in this regard particularly with respect to the ALJ's failure to consider the combination of Petitioner's impairments. *See, e.g., Smolen v. Charter*, 80 F.3d 1273, 1289-90 (9th Cir. 1996); *see also* 42 USC § 423(d)(2)(B); 20 CFR §§ 404.1523, 416.923.

_____

[3]The "anxiety-related disorder" is clearly Petitioner's PTSD. Accordingly, the Court finds no merit in Petitioner's contention that the ALJ failed to make any findings regarding this impairment.

**MEMORANDUM DECISION AND ORDER - 11**

With respect to Petitioner's coronary artery disease and asthma which the ALJ does mention in the legible portion of the decision, the ALJ appears to state a conclusion that these impairments are not severe, but sets forth no specific reasoning. Instead, the ALJ refers to "the above" discussion which is a summary of certain medical evidence. This summary includes:

- Petitioner was seen in the emergency room on April 14, 2005 with shortness of breath and acute exacerbation of COPD, "however [sic] is noted that she continued to smoke." (AR 22) (*citing* Exh. 10F).

- Records from Terry Reilly Health Services indicate the claimant was treated for a number of concerns including asthma. (AR 22).

- Claimant participated in a physical consultative exam on January 24, 2007, which noted that she had a history of myocardial infarction and hypertension which was not well controlled, among other impairments, and was capable of medium exertional level work, with occasional restrictions in balancing, kneeling, crouching, crawling, stooping, etc." (*Citing* Exh. 18F).

- Petitioner has a history of allergic rhinitis with mild persistent asthma (Exh. 2F); was treated for asthma at Terry Reilly Health Center which was under good control with medication and "undersigned notes that throughout the relevant time frame the claimant has continued to smoke despite her physicians' advice, which would seem to indicate that this condition causes little, if any, limitation in her ability to perform normal work activities." (AR 23).

- Claimant seen at St. Alphonsus Hospital on June 5, 2006 for chest pain and found to have had a myocardial infarction and an occlusion of the left circumflex artery

which did not respond to catheterization; she had no further arythmias and was discharged on June 8, 2006, with no further records of cardiovascular treatment in the file. (AR 24).

The Court concludes that the ALJ's discussion is not sufficient to afford meaningful review of his decision either due to the illegibility in the opinion or by omission. *See Burnett v. Bowen*, 830 F.2d 731, 736 (7th Cir. 1987)("[T]o ensure meaningful appellate review at least a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which evidence is presented to counter the agency's position." )

Further, reviewing the record as a whole, the Court does not accept the ALJ's conclusion as reasonable given the significant amount of evidence not cited by the ALJ regarding Petitioner's asthma and COPD. *See Richardson* 402 U.S. at 401; *Matney*, 981 F.2d at 1019. The record as a whole presents an individual who has had asthma since childhood and relies on an inhaler four times a day for breathing assistance, with a COPD diagnosis, emergency room admissions for breathing difficulty and a heart attack, further identified arterial blockage that was not responsive to catheterization and who is not able to afford cardiovascular treatment, tires from being out of breath easily and needs to lie down and rest "ad lib" throughout the day. (AR 396). This non-physician reviewer is unable to determine that the substantial weight of the record supports a finding that Petitioner's COPD or coronary artery disease or asthma, or combination of Petitioner's impairments, is "non-severe" – or no more than *de minimis* – without the benefit of the ALJ's reasoning. *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *see also Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (demonstrating importance of

considering the combined effects of all of the claimant's impairments on his or her ability to function, without regard to whether each alone is severe).

Moreover, the one analytical statement the ALJ did make with respect to the evidence and his finding of non-severity regarding Petitioner's asthma does not appear to follow the standard for a severity determination. The ALJ stated that Petitioner "continued to smoke despite her physicians' advice, which would seem to indicate that this condition causes little, if any, limitation in her ability to perform normal work activities." (AR 26). The question at step two of the sequential process is whether Petitioner's impairment is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience. *See* SSR 85-28; *Iyukert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). What the ALJ appears to be saying is that he does not believe Petitioner is as limited by her asthma as she claims given that she is still smoking. The Court views the ALJ's finding as a statement about the Petitioner's credibility, not her actual limitations. Petitioner's failure to quit smoking *might* properly be considered in assessing her credibility question, but is not obviously relevant to her degree of impairment. Many individuals who are unable to work are able to engage in the act of smoking. There is no evidence in the record which supports the ALJ's "inference" that her continued smoking reflects that her asthma or COPD is not severe. [4]

_____

[4]The record shows that Petitioner quit smoking once, but started again when her depression worsened and continues to smoke because she feels that she has no reason to live. (*See* AR 425-26).

**MEMORANDUM DECISION AND ORDER - 14**

The ALJ may consider the Petitioner's failure to follow a prescribed treatment in the disability determination. However, the treatment must be prescribed, and not merely a recommendation, and there must be evidence that her compliance with the treatment would eliminate her disability. *See Cassidy v. Schweiker*, 663 F.2d 745, 749 (7th Cir. 1981); *Sousa v. Callahan* ,143 F.3d 1240, 1245 (9th Cir. 1998); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (treating tobacco use same as drug or alcohol addiction); *see also* CFR § 404.1530, 404.1535(b)(1), 416.935(b)(1). Neither requirement is appears present on this record.

For all of the reasons above, the Court finds that the ALJ did err by making insufficient findings in step-two of his analysis, and turns now to the question of whether the error was harmless. The Court disagrees with Respondent's contention that the ALJ's consideration of Petitioner's impairments in the RFC analysis ends the harmless error inquiry. The Court believes that in this case, Petitioner may have been prejudiced by the ALJ's failure to find severe Petitioner's COPD, coronary artery disease or asthma,[5] and particularly to consider whether a combination of Petitioner's impairments is severe. The ALJ's findings are simply insufficient for the Court to meaningfully review the ALJ's decision in this regard. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (regardless of whether there is any adequate evidence in the record to support an ALJ's decision, the ALJ must rationally articulate the grounds for her decision, building an accurate and logical bridge between the evidence and her conclusion because we confine our review to the reasons supplied by the ALJ); *accord Sarchet v. Chater*,

---

[5]Petitioner does not address the record evidence regarding her lumber degenerative disk disease.

78 F.3d 305, 307 (7th Cir. 1996). The Court finds reversal warranted at step two of the ALJ's sequential analysis due to the insufficiency of the ALJ's findings.

### 3. Step Three: Listing Requirements Under the Regulations.

At step three of the sequential process, the ALJ was required to determine whether Petitioner's impairments, or combinations thereof, meet or equal an impairment listed in the regulations. Petitioner argues that the ALJ erred in step three by failing to address whether the Petitioner met or equaled Listing 3.02 in regard to her COPD. *Petitioner's Brief*, (Docket No. 23), p. 9. Petitioner reasons that "she was very close to meeting listing 3.02 with a height of 68 inches and FEV1 readings of 1.63, 1.68 and 1.49, (Exhibit 14F/77, Tr. 347) from July 7, 2005, yet the ALJ does not consider this listing, nor does he send her out for a consultative exam related to her COPD." *Id.* at p. 10. Petitioner also suggests that these facts trigger a requirement under SSR 96-6p for the ALJ to obtain an updated medical judgment as to medical equivalence. *Id.*

Respondent argues that Petitioner has the burden of proving that she has an impairment that meets or equals the Listing criteria, and that she admits she does not. *Respondent's Brief*, (Docket No. 26), p. 16. Respondent contends that the ALJ has "no obligation to compare the combined effects of a claimant's impairments to any listing in an equivalency determination" (*citing Burch v. Barnhart*, 400 F.3d, 676, 683 (9th Cir. 2005)). Respondent further contends that the ALJ was not required to obtain a consultative exam for her COPD under SSR 96-6p, *(citing* 20 CFR § § 404.1527(f)(2)(iii), 416.927(f)(2)(iii)).

The ALJ has a responsibility to develop the record and interpret and consider the evidence. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). At step three of the sequential process, the ALJ is generally required to elaborate as to which disability Listings he considered in the process, and state reasons why Petitioner's claim did not meet or equal the contemplated Listing. "However, in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Id.*; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Likewise, if the ALJ improperly fails to consider a Listing that may avail Petitioner of benefits, that "error [is] harmless if [the] findings he made elsewhere conclusively negate [Petitioner's] claim under [the] Listing [that was not considered] . . . ." *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (*citing Fischer-Ross v. Barnhard*, 431 F.3d 729, 733 (10th Cir. 2005)).

COPD is analyzed under Listing 3.02(A). A claimant who suffers from COPD due to any cause meets the Listing if she has a forced expiratory volume in one second (FEV1) equal to or less than the values specified in a table included in the Listing. Based on Plaintiff's height, 68 inches, an FEV1 of 1.45 or less would qualify her as disabled. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 3.02 (2010). According to Petitioner and her medical records (AR 347), her values "were close," but do not meet the Listing criteria at 1.63, 1.68 and 1.49. (AR 347).

The introductory note to the regulations governing listed respiratory impairments explains further that an FEV1 value should not be analyzed in isolation from other evidence in assessing whether the claimant satisfies the criteria for the listed impairment:

> The listings in this section describe impairments resulting from respiratory disorders based on symptoms, physical signs, *laboratory test abnormalities*, and response to a regimen of treatment prescribed by a treating source.
> ....

> ... Because th[e] symptoms [attributable to these disorders] are common to many other diseases, a thorough medical history, physical examination, and chest x-ray or other appropriate imaging techniques are required to establish pulmonary disease. *Pulmonary function testing is required to assess the severity of the respiratory impairment once a disease process is established by appropriate clinical and laboratory findings.*
>
> ....
>
> Respiratory impairments usually can be evaluated under these listings on the basis of a complete medical history, physical examination, a chest x-ray or other appropriate imaging techniques, *and spirometric pulmonary function tests*.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00 (*emphasis added*). "For a claimant to show his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original).

Further, Social Security Ruling 96-6p (1996) provides that an ALJ must obtain an updated medical opinion from a medical expert *if* the ALJ believes that "the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or [w]hen additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." This authority accords an ALJ broad discretion in determining whether to consult a medical expert.

It is undisputed that Petitioner's FEV1 values from July 2005 did not meet the Listing requirements. Petitioner argues however that the lack of evidence supporting her classification of disability under the Listing was in error because the ALJ failed to seek additional evidence in the form of a consultative medical opinion. The ALJ appears to have recognized the need for an updated medical opinion on Petitioner's COPD, however, at the hearing as he inquired about

whether such evidence existed. (AR 438). Petitioner responded that she had an appointment scheduled on the day after the hearing for such testing. (*Id.*) The record does not indicate, however, that Petitioner supplemented the record with any such testing results.

Because the FEV1 values do not meet the Listing requirement, the ALJ's failure to consider this evidence may not lead to a different result. However, because the ALJ did not consider the 3.02 Listing at all, there is no way for this Court to determine whether he would or would not have exercised his discretion to receive additional medical evidence on this impairment. Again, this Court may not replace its own judgment on findings of fact or speculate as to what the ALJ's judgment would have been had he considered these other impairments or combination of impairments in his analysis. *See Arizona Cattle Growers' Ass'n v. United States Fish & Wildlife, 273 F.3d 1229, 1236 (9th Cir.2001)*(agency must articulate rational connection between the facts found the choice made); *Beno v. Shalala*, 30 F.3d 1057, 1073-76 (9th Cir.1994) (setting aside agency decision where there was no indication that the Secretary had considered materials submitted by the plaintiffs). Moreover, there are no other findings in the ALJ's decision which "conclusively negate the possibility of any finding that Claimant is presumptively disabled under the pertinent listing." *Fisher-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005). Accordingly, the Court finds error in step three of the ALJ's sequential analysis also.

**3.** **Step Four: The determination of Petitioner's Residual Functional Capacity.**

Petitioner maintains that the ALJ's determination of Petitioner's Residual Functional Capacity ("RFC"), at step four of the sequential process, was in error for several reasons. *Petitioner's Brief*, p. 10-11. Petitioner argues that the ALJ did not consider how the impairments

he did not find severe would affect the Petitioner's mental and physical residual functional capacity, and further, seemed to completely ignore Petitioner's "severe and limiting" COPD and coronary artery disease because Petitioner was unable to afford treatment for these impairments. *Id.*, p. 10. Petitioner contends further that the ALJ erred in discrediting her on the basis that she has not sought medical treatment without considering her explanation for not having done so which included both that she was unable to afford treatment and that she had been told with respect to several of her impairments that there was no further treatment she could obtain. Petitioner contends further that the ALJ's RFC analysis is flawed because the ALJ did not properly disregard the treating physician's statements and did not properly consider "other source" opinions. Finally, Petitioner argues that the ALJ failed to make sufficient findings on Petitioner's credibility or her pain testimony.

The Court agrees that the ALJ made several of these errors as addressed below.

### a.    <u>Credibility of Petitioner</u>

Petitioner argues that the ALJ failed to properly support his finding that Petitioner was not credible generally, and specifically regarding her pain testimony. *Petitioner's Brief*, pp. 15-19 (Docket No. 23). Resolution of conflicts in the testimony and of credibility questions is a function solely of the ALJ. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). Furthermore, "if the ALJ's credibility finding is supported by substantial evidence in the record," the Court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). Indeed, "[c]redibility determinations are the province of the ALJ." *Fair*,

885 F.2d 597, 604 (9th Cir. 1989).

The ALJ determined that the Petitioner's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (AR 28). The ALJ's exact finding is indecipherable from the record. He states:

> While the undersigned will acknowledge that the claimant has some limitations arising from her * * * * that she is restricted to the above noted residual functional capacity. The claimant has testified to a great degree of physical limitation which is not supported by review of the objective medical evidence of record.

(AR 28).

Where, as here, the ALJ finds the claimant's pain testimony to be not entirely credible, the Ninth Circuit has held that "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so," and he "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); SSR 96-7p.

Specifically, in determining whether the claimant's subjective testimony regarding the severity of her symptoms is credible, "the ALJ may consider claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between his testimony and his conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). The ALJ may also consider "unexplained, or inadequately explained, failure to seek treatment or follow a

prescribed

course of treatment." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (*citing Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59).

The petitioner's statements about the intensity or persistence of her pain "may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p. The ALJ must make findings "sufficiently specific to make clear to the individual to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

In evaluating this case, the ALJ made no specific findings regarding which statements of limitation he determined were not credible, how much weight was given to any such statement and his reasons therefore. The ALJ discredited broadly all of Petitioner's statements about her limitations, and found them not to be supported by objective medical evidence. In addition, he found them to be inconsistent with "her reports of activities of daily living" which included that she was engaged in part-time work as a barber through 2004 (part of the time of claimed disability), part-time baby-sitting, is independent in all of her daily activities and not participating in mental health or chiropractic treatment. For these reasons, the ALJ found Petitioner "credible only to the extent that she is restricted to the above noted residual functional capacity." (AR 33).

As discussed above, the ALJ did not explain which of Petitioner's statement he found non-credible, and this Court is unable to find the inconsistencies in Petitioner's general statements about her activity level that would support his finding that the Petitioner is not credible. Petitioner reported and testified throughout the record that she engaged in some normal activities of daily living, including preparing her meals and light house-keeping and grocery

shopping, but that she did so at her own pace, with the ability to sit, stand, or lay down and rest as needed, and that her ability to participate in her daily activities varied greatly depending on whether she was having a "good day" or a "bad day." (AR 89-96; 124-25; 388). She testified that on a "bad day" if was difficult to even get out of bed, and that she did not take care of herself on those days or engage in her normal activities. (AR 117, 424-25, 427). She further testified that on average, she had more bad days than good days in a week. (AR 423). With respect to baby-sitting on a part-time basis, she also reported that she was able to sit or lie down while doing so, again on an as needed basis. (AR 117, 440). Accomplishing these daily activities independently does not mean that she is able to engage in substantial gainful activity. *Cf. Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) (nature of work of caring for home and children provides flexibility to alternate standing, sitting, walking and rest as needed); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.)

With respect to continuing to work part-time as a barber within the time part of the time period for which she is claiming disability, she also testified that she was able to control her schedule in order to try to alleviate the pain, but the ultimately she had to stop working as a barber completely due to her pain resulting from standing extended periods of time. (AR 30-31, 117, 388, 418). In citing her attempts at past work as evidence of not being disabled, the ALJ is essentially penalizing her for attempting to cope with her pain and to function - which is not a disincentive intended by the Social Security system.

Uncontradicted expert testimony supports Petitioner's statements about the need to lie down *ad lib*, *see, e.g*, Consultative Examination dated 1/24/2007 by Barbara Quatrone, M.D.

("Patient needs the ability to change position ad lib.") (AR 396). In view of the evidence, and without any specific reference to Petitioner's limitations or statements or stated reasoning, it is again difficult for this Court to determine if there is any reason to conclude that the record gives reason to find the statements non-credible.

Where the ALJ has made specific findings justifying a decision to discount and reject certain allegations made by Petitioner regarding symptoms and their functional effect on daily activities, and those findings are supported by substantial evidence in the record, as the Court concludes they are in this action, the Court's role is not to second-guess that decision. *Thomas*, 278 F.3d at 959. However, in this case, the ALJ's findings to reject Petitioner's credibility are not sufficiently specific to allow the Court to conclude that the ALJ's decision is based on permissible grounds and that the ALJ did not arbitrarily discredit Petitioner's testimony. *See Bunnell*, 947 F.2d at 345. Accordingly, the Court concludes that the ALJ's decision to reject certain aspects of Petitioner's subjective testimony concerning her limitations is erroneous.

The Court concludes similarly with respect to the ALJ's discredit of Petitioner's pain testimony specifically. The ALJ appears to discredit her pain testimony on the grounds that she is not seeking medical treatment. The un-controverted record shows that Petitioner is limited financially and is unable to afford much of the medical treatment, however beneficial or recommended, and the ALJ cites no evidence of any treatment that has been prescribed and financially available of which Petitioner has not availed herself. What remains in support of the ALJ's conclusion to discredit Petitioner's pain testimony is only a finding that the objective medical evidence does not support her complaints. The law is clear that this factor alone is insufficient to discredit her pain testimony absent evidence of malingering. SSR-96-7p. There is

no evidence of malingering, and in fact, there is expert opinion testimony to the contrary. Consultative psychiatric examiner, James M. Read, Ph.D., concluded that Petitioner "appears to have genuine and quite credible evidence of pain." (AR 385), which the ALJ does not address in his decision. Ignoring competent evidence in the record that suggests that Petitioner is credible is error. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

The ALJ's reasoning to support discrediting Petitioner's pain testimony is not set forth in sufficient specificity for adequate judicial review; does not appear to be supported by clear and convincing evidence in the record; and appears to ignore competent evidence to the contrary. Accordingly, the Court finds that the ALJ erred by not properly discrediting the Petitioner's pain testimony.

### b.    <u>Opinion Testimony</u>

In his RFC analysis, the ALJ reports to have considered three sources of opinion testimony.  First, he considered the opinion of Harry D. Silsby, M.D., who first treated Petitioner following her hospital admission for attempted suicide in February 2004, and then evaluated her for disability on December 7, 2006.  (AR 378, 379).  Second, the ALJ considered and afforded great weight to a State agency residual functional capacity assessment which concluded that Petitioner is able to perform light work with occasional climbing, kneeling, and crouching. (AR 229).  Finally, the ALJ reported that he considered a consultative residual functional analysis done by Barbara Quatrone, M.D., on January 24, 2007, in which she concludes that Petitioner is restricted to medium exertional level work,(AR 394 - 396), but found that the previous State agency consulting examiner's opinion was more consistent with the evidence in its entirety. (AR 34).  Accordingly, the ALJ concluded that the Petitioner was restricted to no more than light

exertional level work. *Id.* Finally, the ALJ found "no other records from treating or examining physicians contained in the file which would indicate the claimant not capable" of the residual functional capacity he determined for Petitioner. (AR 34).

Petitioner argues that the ALJ did not properly disregard the treating physician's statements when discounting Dr. Silsby's opinion that Petitioner's mental impairments are not well-managed with medications. *Petitioner's Brief*, p. 12 (Doc. No. 23).

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, as treating physicians have a greater opportunity to observe the claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). While a treating physician's opinion is normally entitled to deference, it is not necessarily determinant as to the question of disability. *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 (9th Cir. 1989). A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion are all sufficient reasons for rejecting an opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

In his RFC analysis, the ALJ addresses Dr. Silsby's opinion as follows:

The undersigned also considered the statement by Dr. Silsby as found in Exhibit 15F indicating that the claimant's mental impairments are only marginally controlled on medications, however the undersigned notes this is not apparent in reviewing the records of the claimant's treating physicians as found [sic] Exhibit 14F, in which she is noted to

respond well to her medications.

(AR 34.)  Respondent concedes that the ALJ rejected Dr. Silby's testimony that Petitioner's

mental impairments have been only marginally controlled on medication since February 2004.

*Respondent's Brief*, p. 11 (Docket No. 26).   Respondent argues, however, that the ALJ did so

properly because Dr. Silsby's opinion was "conclusory and unsubstantiated," *id.* (*citing Thomas

v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)), and that "[w]ith one exception on November 24,

2004, Petitioner reported or was found by her healthcare providers to be doing well on her

medications for bipolar treatment."[6]  *Id.* at 12.

The Court disagrees with Respondent's interpretation of the Petitioner's treating

physician records as showing that Petitioner was stable on medication with the exception of one

occasion.  The ALJ cited the entire 14F exhibit in disregarding Dr. Silsby's statement. (AR 34).

Exhibit 14F contains 107 pages of medical records including hand-written and transcribed

treatment and progress notes and lab reports.  (AR 271-377).  These records show the following:

Dr. Silsby began treating Petitioner in February 2004, following her admission for a suicidal

ideation.  (AR 157).  During the follow up two weeks later, she reported doing well on her

prescribed medications which included Trileptal.  (AR 291).   Her low-income pharmacy,

however, did not cover the Trileptal on its formulary and Petitioner could not afford it.  *(See* AR

279).  She later was taking Effexor and Paxil which was not working.  (AR 288).  She had

regular complaints of increasing depression up through August 2005. (AR 290, 283, 279, 278,

_____

[6]It is unclear if Respondent is intentionally or inadvertently restricting his argument to
only the medical evidence regarding Petitioner's bipolar disorder.  Regardless, the ALJ's finding
was directed at "Petitioner's mental impairments" which would include her anxiety related
disorder as well.

277, 276). During this time, there are several notes by her treatment provider of difficulty in finding her an effective mood stabilizer also covered by the formulary, her bipolar disorder not being well controlled, trying different medications and of ongoing depression, mania and suicidal ideation. (AR 283, 279, 278). In August she started taking Depakote which appears to have had some success for a short period of time. (AR 276, 275). By November 2005, however, Petitioner was already reporting that she became highly depressed following the death of her father. (AR 273). The treatment notes state that in April 2006, she was highly depressed and continued to report suicidal ideation through June 2006 (AR 273, 271, 272). She was admitted to the hospital with a myocardial infarction on June 5, 2006 and reported that she had not taken herself to the hospital for three days because she was hoping that she would die. (AR 272).

The Court cannot concur with the ALJ that these treatment records generally contradict Dr. Silby's opinion that Petitioner's mental impairments are not well controlled with medication. The court also agrees with Petitioner that the ALJ erred in failing to consider the remainder of Dr. Silby's opinion that Petitioner "still has significant difficulty taking care of her self and interacting appropriately occupationally," and that her "ability to concentrate and persist at task is poor." (AR 378, 380). Accordingly, the ALJ erred by failing to properly discount additional medical evidence that contradicts his conclusion regarding Petitioner's RFC. (*See* AR 25 - 34) . *Kager v. Astrue*, 256 Fed.Appx. 919, 922 (9th Cir. 2007) (*citing Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *see also*, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) *Kager v. Astrue*, 256 Fed.Appx. 919, 922 (9th Cir. 2007); 20 C.F.R. § 404.1527(b) (ALJ must consider all medical evidence).

**4.** **Decision Based on Substantial Evidence Supported by the Record**

In order for the ALJ's disability determination to be upheld, the ALJ has the burden of showing that his decision is based on substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (*citing Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986)). In this regard, the ALJ concluded that Petitioner had not met her burden of proof regarding her claims of disability because she is capable of performing her past work as a hairstylist or housekeeper. (AR 34). To be upheld, this conclusion must be based on substantial evidence and supported by the record.[7] This Court concludes that it is not.

The vocational expert in this case testified that there was no employee tolerance for the need to lie down *ad lib*, and that Petitioner would not be able to do her past work under her stated limitations including that she is unable to maintain through-out an eight-hour day; that she frequesntly lies down throughout the day, that she is up and down all night, which interferes with her ability maintain focus and concentration throughout the day, and that she has more bad days than good and on bad days occasionally she can't even get out of bed. (AR 448 - 49). Petitioner's limitations are based on her testimony, other source evidence including her treating chiropractors (AR, her neighbors (AR 126), and her treating physician, Dr. Silsby. (AR 378-81). Expert opinion supports her limitations. *See* Evaluative Examination of James Read, Ph.D., (AR 388-89); Evaluative Examination by Barbara Quatrone, M.D. (AR 396)("Patient needs the

---

[7] In any claim for disability, the initial burden of proof rests upon the claimant. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).

ability to change position *ad lib*.")  The ALJ cites no evidence that  wholly contradicts

Petitioner's limitations.   The DDS residual functional capacity assessment, which the ALJ

expressly afforded great weight, does not address all of Petitioner's impairments.  (AR 229-236).

Accordingly, the ALJ's conclusion that Petitioner is capable of performing her past work is

based primarily on his improper discrediting of her testimony and is not supported by substantial

evidence in the record.

The ALJ's determinations that Petitioner failed to meet the Listing requirements for

COPD or any combination of her impairments may be supported by substantial evidence in the

record.  However, the ALJ's failure to make any findings regarding these impairments renders it

impossible for the court to determine if they would or would not be supported by substantial

evidence. The failure of the ALJ to make more specific findings is reversible error.

Further, as a result of these errors, the ALJ did not properly indicate the outcome of steps

four and possibly five of the sequential process.  Accordingly, this Court cannot find that

Petitioner is disabled and order the payment of benefits.  *See Harman v. Apfel*, 211 F.3d 1172,

1178–79 (9th Cir. 2000).  Rather, where "there are outstanding issues that must be resolved

before a proper disability determination can be made," remand is appropriate.  *See Vasquez v.*

*Astrue*, No. 06-16817, 2008 WL 4791860, at *7–*8 (9th Cir. 2008).

**C.     Conclusion**

With all of the foregoing in mind, this case is remanded to the Commissioner to

necessitate the ALJ's further review and consideration of Petitioner's asthma, coronary artery

disease, and COPD, and combination of impairments, and Dr. Silsby's opinion as a treating

physician.  Further, the Commissioner shall direct the ALJ to reevaluate steps two, three, four

and, if necessary, five of the sequential process.  Once that has been accomplished, the action may be returned to this Court for further proceedings, if necessary.

**ORDER**

For the foregoing reasons, the Commissioner's determination is REVERSED and REMANDED for further proceedings as provided in the foregoing Memorandum Decision and Order.  On remand, the ALJ is directed to make findings regarding the severity or non-severity of Petitioner's COPD, coronary artery disease and asthma and combination of her impairments under step-two and to re-evaluate step-three.  The ALJ is further directed to reassess the step-four conclusion in light of Petitioner's complete RFC and this Memorandum Decision and Order, and if necessary, proceed to step five.



DATED:  **August 31, 2010**.

Honorable Larry M. Boyle
United States Magistrate Judge